# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 22-cr-0033 |
| JOSEPH PAUL BERGER | : | |

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

Defendant Joseph Paul Berger has been charged by indictment with possessing 13 unregistered machine guns and 12 unregistered firearms silencers. The arsenal that the defendant and his father amassed over the course of more than a decade shows that he is a danger to the community, and his history of anti-government rhetoric demonstrates that he is unlikely to abide by this Court's terms of supervised release thereby making him a risk of flight. Because no condition or combination of conditions will reasonably assure the defendant's appearance as required and/or the safety of the community, the government moves pursuant to 18 U.S.C. §§ 3142(e) and (f) for a detention hearing and pretrial detention of the defendant.

## I. FACTS

The case arose after agents from Customs and Border Patrol and Homeland Security Investigations (HSI) seized three packages containing firearm silencers that were imported from China. The packages were addressed to the defendants at their residence in Bethlehem, Pennsylvania. Agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) inspected the intercepted devices and confirmed that they were firearm silencers as defined in 18 U.S.C. § 921. The silencers were therefore subject to the provisions of the National Firearms Act. The paperwork accompanying two of the silencers included a cell phone number for defendant Joseph Paul Berger.

Based on the seizure of these devices, HSI agents obtained a search warrant for the defendants' residence. During the execution of the search warrant, agents seized electronic devices, 12 firearm silencers, and 13 suspected machine guns.[1] The silencers and suspected machine guns were submitted to the ATF Forensics Laboratory where they were examined by an ATF expert. The expert concluded that each of the silencers met the legal definition of a firearm silencer and that none of them had the required registration in the National Firearms Registry. The silencers that were recovered from the defendant's home included the "solvent trap" silencer intercepted by HSI at the border, and nine "oil filter" silencers that were made from commonly available auto parts. The oil filter silencers were modified so that a bullet could be fired through them, and in some examples the ends of the silencers were already deformed as if a bullet had been fired through them.

The ATF forensics expert also concluded that each of the suspected machine guns were, in fact, machine guns and were not registered as required under the NFA. A machine gun is "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). Here, the ATF lab expert test fired each gun and determined that it was capable of fully automatic fire. Additionally, the report notes that each machine gun either had an index mark on the receiver that indicated the fully automatic firing position, or a trigger group which included a

---

[1] Agents also observed an additional 5 firearms of a variety of make and caliber, as well as hundreds of rounds of ammunition. Because the defendant and his father were not at the time prohibited from possessing these additional firearms and ammunition, they are not the subject of the charges of the indictment.

selector that permitted the gun to be fired as a machine gun. Images below show four of the machine guns that were seized from the defendants' home.



**I.O. Industries, Inc. Casar, 7.62x39mm caliber, serial number 015218
Purchased by Joseph R. Berger**



**RomArm AES 10B, 7.62x39mm caliber, serial number VR24951976
Purchased by Joseph R. Berger**



**Century Arms C308 Sporter, .308 Winchester, serial number C308E10500
Purchased by Joseph P. Berger**



**MKE Z5P, 9mm caliber, serial number T0624-15BK02008
Purchased by Joseph P. Berger**

As part of this investigation, HSI agents confirmed that one of the defendants was the original purchaser of all of the guns listed in the indictment—in total Joseph Paul Berger purchased three of the machine guns and Joseph Raymond Berger purchased ten of the machine guns. Investigators also learned from manufacturers and federal firearms licensees that the seized firearms were not originally sold as fully automatic machine guns. When the guns were examined by ATF, the expert determined that each gun was modified, after purchase, to make it capable of fully automatic fire. The modification of these guns involved milling or grinding off a portion of the firearms' receiver which were designed to prevent the weapons from being converted to machine guns. Examples of the modifications for the guns show above are detailed here:









The defendants stockpiled the silencers and machine guns in a secured basement room. Subsequent investigation showed that the room was exclusively controlled by the defendants—it was secured by a lock and the defendants were the only people to enter and access the room. Investigation also showed that firearms parts designed specifically for machine guns were ordered from various online retailers by the defendants. For example, in August and October 2016, "Joseph R. Berger" purchased bolt assemblies for Zenith Arms firearms that were purchased by Joseph Paul Berger during those same months. The online listing for the bolt assemblies notes that "These are military production, full-auto bolt assemblies." In December of 2020—approximately one month before the search warrant was executed—defendant Joseph Paul Berger ordered additional parts for the same machine guns from a separate online retailer.

This is strong evidence that both Joseph Raymond and Joseph Paul Berger jointly possessed the machine guns that were recovered from their basement.

HSI's investigation also revealed that defendant Joseph Paul Berger has the knowledge of firearms and machining necessary to convert the weapons from semi-automatic firearms, as they were originally sold and purchased, into unregistered fully automatic machineguns. Information obtained from a computer seized during the search showed that defendant Joseph Paul Berger was a certified armorer and machinist, has experience working on firearms from his time in the military, and hosted a podcast about firearms called the "Alt-Right Armory." In that podcast, the defendant uses the moniker "GlockDoctor1488" and conducts extensive discussion of weapons such as those seized from his home. Finally, search terms from the defendants' computer show that they were seeking out devices to be used as firearms suppressors. Specifically, they searched the internet for "best solvent trap suppressor," "fuel filter suppressor," "oil filter suppressor" and "80% suppressor kits."

In sum, the facts of this case show that the defendants illegally possessed a trove of firearms suppressors and machine guns in violation of the National Firearms Act. As explained below, these weapons are exceedingly dangerous and demonstrate that the defendant presents a danger to the community.

B. **Maximum Penalties**

The maximum penalty for a violation Title 18 United States Code Section 922(o) (Count 1 of the indictment) is 10 years' imprisonment, 3 years of supervised release, a $250,000 fine, and a $100 special assessment.

The maximum penalty for each count of violating Title 26 United States Code Sections 5861(d), 5871(Counts 2 and 3 of the indictment) is 10 years' imprisonment, 3 years of supervised release, a $10,000, and a $100 special assessment.

Thus, the total maximum and mandatory minimum sentence the defendant faces is: 30 years' imprisonment, 3 years of supervised release, a $270,000 fine, and a $300 special assessment.

### C. Criminal History

The defendant has no criminal history.

### D. Employment/ Ties to the Community

The defendant lives in Bethlehem, Pennsylvania with his mother and his codefendant father. Aside from his time in the Navy, he is a lifelong resident of Pennsylvania. He worked at Lehigh Valley Heavy Forge Corporation.

## II. ARGUMENT

Where, as here, the Court is required to hold a detention hearing, *see* 18 U.S.C. § 3142(f)(1)(E), the Court must weigh several factors to determine whether there are conditions of release that will both reasonably assure the appearance of the defendant and will assure the safety of the community. There are four factors that must be considered when making this determination. First, the court must examine the "nature and circumstances of the offense charged, including whether the offense is crime of violence." *Id.* § 3142(g)(1). Second, it must look at the "weight of the evidence against the person." *Id.* § 3142(g)(2). Third, it must examine the history and characteristics of the defendant. *Id.* § 3142(g)(3). Finally, it must weigh "the

nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g)(4). Each of these factors weigh in favor of detention.

A. Nature and Circumstances of the Offense/Nature and Seriousness of Danger

The nature and circumstances of the offense weigh strongly in favor of detention—the defendant amassed an arsenal of fully automatic machine guns: 8 AK-style rifles, 2 C308 .308 Winchester caliber rifles, 2 MP5k submachine guns, and 1 RPK-style machine gun. There can be no doubt that possession of these unregistered and "exceedingly dangerous weapons" present the most serious type of danger to the community. *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804,* 822 F.3d 136, 142 (3d Cir. 2016) (hereinafter "*One Machinegun*"); *accord United States v. O'Brien,* 560 U.S. 218, 230, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010) (noting "[t]he immense danger posed by machineguns"); *United States v. Henry,* 688 F.3d 637, 640 (9th Cir. 2012) ("A modern machine gun can fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds. Short of bombs, missiles, and biochemical agents, we can conceive of few weapons that are more dangerous than machine guns.") (internal citation omitted); *United States v. Kirk,* 105 F.3d 997, 1001 (5th Cir.1997) (en banc) (per curiam) (Higginbotham, J., concurring) ("Machine guns possess a firepower that outstrips any other kind of gun."). The Third Circuit has forcefully emphasized the inherent danger presented by machine guns. *See One Machinegun*, 822 F.3d at 142 (quoting *Haynes v. United States,* 390 U.S. 85, 87, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968) (describing machine guns as "weapons used principally by persons engaged in unlawful activities"); *United States v. Jennings,* 195 F.3d 795, 799 n.4 (5th Cir.1999) (noting

10

"machine guns ... are primarily weapons of war and have no appropriate sporting use or use for personal protection")).

The defendant jointly and constructively possessed *thirteen* of these dangerous weapons amassed over the course of a decade. The ATF Forensic Branch noted that each machinegun was modified from its original state so that it was capable of fully automatic fire. In other words, the defendant was able to fire multiple rounds with a single squeeze of the trigger. The Supreme Court of the United States and Third Circuit Court of Appeals have recognized the inherent danger posed by these weapons—and that danger is a direct reflection of the defendant.

The defendant has already shown that he has the capability and willingness to modify legally purchased firearms into weapons of war. The only way to ensure that he does not continue to present a danger to his community is for the defendant to remain incarcerated pending trial.

Although the defendant no longer possesses these weapons, his interest in acquiring firearms was not deterred by the federal search warrant executed on the defendant's home in January 2021. Since that time, the defendant has acquired additional firearms on at least two occasions. Additionally, when Joseph Raymond Berger was arrested at his home at 3401 Lehigh Street on February 7, 2022, HSI agents recovered five more guns from inside of the house.

Agents also observed a "3D printer" belonging to Joseph Paul Berger on a table inside of the home. Plastic firearms magazines for handguns and components to manufacture firearms magazines were sitting next to the printer. As explained in more detail below, the defendant hosted a podcast called the "Alt-Right Armory" which was dedicated, in part, to discussions of firearms. In the first episode, the defendant uses the name "GlockDoctor1488" and briefly

discusses a future episode dedicated to 3D printing "ghost guns." The podcast makes clear that the defendant has a marked interest in 3D printing guns, which makes him far more dangerous. If released, the defendant could easily obtain another of these devices and resume manufacturing firearms components.

    B. <u>Weight of the Evidence</u>

The weight of the evidence in this case is strong. As explained in the factual recitation section above, the defendant and his father purchased the guns that were seized from his home and the parts necessary to modify them into machine guns. Each of these weapons were purchased by the defendants—including three purchased by Joseph Paul Berger. The defendant ordered parts for two of these machine guns approximately one month before the search warrant was executed and also attempted to obtain a silencer for the gun during that same time period. The silencers that were intercepted by the HSI were unlawfully ordered by the defendant—as proven by the use of his cell phone number in the order form—and the computer search terms show that he knew that the devices he was ordering were not cleaning devices, but firearms suppressors. Moreover, the defendant's extensive knowledge of firearms clearly demonstrates that he had the capability to convert these guns into automatic weapons. Finally, this investigation revealed that the defendant and his father had nearly exclusive access and control of the guns in question. Put simply, the evidence in this case is strong and weighs in favor of detention.

C. <u>History and Characteristics of the Defendant</u>

Although the defendant has no previous criminal history, which weighs in his favor, the evidence accrued during this investigation shows that he is unlikely to abide by any terms of pretrial release that this Court will set. In the defendant's podcast, he regularly espouses anti-government and anti-law enforcement views. For example, in the pilot episode of the Alt-Right Armory the defendant notes that a "white man with a rifle can be very dangerous to the system indeed if he has the right motivation." He then extolls the values of police murderer Eric Frein and fantasizes about the cost that could be incurred by a group of people like Frein. As the Court undoubtedly recalls, Frein, in 2014 ambushed Pennsylvania State Troopers outside of a station and murdered Cpl. Bryon Dickosn. Frein then fled and was the subject of a manhunt before being caught, prosecuted, convicted, and sentenced to death. The defendant and his cohost discuss targeting not only police, but "legislators, lobbyists, and left-wing billionaires" for assassination with explosives. They halfheartedly claim that the discussion is a "prank" and a "playful thought," and they are not advocating for violence, but it is clear that the discussions are serious.

To be sure, the defendant's views do not form the basis for these charges, but they provide strong evidence of his anti-government ethos. Based on these views, it is highly unlikely that the defendant will respect or abide by conditions of release set by this Court, thereby making him a danger to the community and a risk of flight. This risk is compounded because the defendant has never faced criminal charges, let alone the serious federal charges that he now faces here. The only way to ensure that the community is protected and the defendant appears at trial is to detain him.

## III. CONCLUSION

The evidence in this case is strong and the allegations are serious. The defendant possessed thirteen machine guns, twelve suppressors, and is unlikely to abide by any conditions of release set by this Court. He should be detained.

WHEREFORE, the government respectfully submits that its Motion for Defendant's Pretrial Detention should be granted.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
United States Attorney


 /s/ Anthony J. Carissimi
ANTHONY J. CARISSIMI
Assistant United States Attorney

CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention and Proposed Order was served by electronic mail, on the following defense counsel:

Eric Winter, Esquire
42 South Fifth Street
Reading, PA 19602


 /s/ Anthony J. Carissimi
ANTHONY J. CARISSIMI
Assistant United States Attorney

Date:   February 9, 2022